Final case for argument is 24-2153 Lyonra Technologies v. Cisco. So if you've all been sitting here this morning, you got to see what kind of an eclectic docket we have, and now here comes a contract case. So Mr. Yim, whenever you're ready. Thank you, Your Honor. I may please the Court. In many respects, the law is about setting expectations and then assessing whether those expectations have been met. That is true for contracts and defenses asserting contracts. It is particularly true for patent claim language and patent infringement analysis, which is the exclusive jurisdiction of this Court. Now this appeal presents as a contract case, but it revolves almost entirely around questions of the patent law. Well, just let me ask you, speaking of patent law, we got a 28-J a while back about the PTAP proceedings. What's the current status of the PTAP proceedings and how do they overlap with the claims at issue here? Yes, Your Honor. Lyonra has filed for a direct review, and that is still pending. So it is still a live case in that sense. So what's the timeframe here? My understanding is that was filed in November, so it is somewhat recent, and we are awaiting a decision. But you got a decision from the Board. That is correct, from the Board, and we are seeking direct review. And the Board invalidated all the claims or some of the claims that are issued? The operative claims here, I understand. Okay. Thank you, Your Honor. What if we see this as a contract case? This is a very good question, Your Honor. So the implication of your question, I believe, would be that there are citations to Delaware law. This Delaware law is the form, the selected law in the contract. Unfortunately, Delaware law does not provide much guidance to the court as to how great the scope is of the license grant here. The problem is that Delaware courts do not engage in patent infringement analysis. As we referred to in our brief, they also mentioned that dictionaries are not very helpful in analyzing contract language out of context. And so this Court's jurisprudence is very rich in asserting that the context must be when analyzing whether infringement exists or what the actual claim limitation is. So, Your Honor, I respectfully submit that Delaware law could function here, but it is not as helpful as this Court's own rich jurisprudence on patent infringement analysis. If anything, can you point to that would indicate what the expectations of the parties to this RPX agreement were when they used the language that's at issue here element or material element? So according to standard contract interpretation principles, we are limited to the agreement itself. So the intents of the parties would be objectively revealed in the language of the contract. And what I would suggest to the court is that if this had been as broad of a scope as Sisco asserts, then there would have been no mention of a material step or element of a claim. It would have just simply said inclusion of an RPX licensed product. So it could just have been if Sisco made a paper clip, just attaching a paper clip to – I'm sorry, if Intel made a paper clip and attaching it to a Sisco product. That is not what we are dealing with here. We are dealing with a specific – the language is this is Appendix 3. The stipulation which quotes all the relevant language. It requires that the product from the RPX licensee, Intel, that it satisfies one or more material elements or steps of a claim of any patent. And then in the next section in paragraph 6 for the covenant, it repeats that same construction. The product from the RPX licensee, Intel here, must satisfy an element or step of a claim in any patent against any entity. So to answer your Honor's question, this is – this reveals the intent of the parties, which was narrow. And you're saying it doesn't satisfy – that the Intel processors don't satisfy the material claim element? But if we're looking at patent law, isn't each claim element by definition material? Yes, Your Honor. To answer your first question, that is correct. And the second part of your comments, what is material? Yes, you're correct. And we do not differentiate between any claim element and a material element in our briefing. We believe that the district court skipped over the entire claim element analysis by limiting the analysis to just the word processor. And also by only identifying the presence of an Intel processor without determining what it does. We have a functional claim element here at issue. But I guess I'm still struggling to understand. What would allow us to say that the parties to the RPX agreement would not have reasonably understood an Intel processor to satisfy an element of your claim which expressly requires a processor? So, the operative language in the license grant and the covenant specifically mentions the patent. So, you have to look at the subject patent that we are litigating at this point. And so, if you turn to the next page of appendix four, which provides the operative language of the 518 patent, it talks about a processor. And it's a lengthy description of what the processor must do. And so, that is the functional element that this court has. I guess maybe I'm misunderstanding what your argument is, but the agreement just requires that a portion of the product satisfies one or more material elements. Not that the Intel processor alone must satisfy a claim limitation, right? Is that your argument? That is my argument, Your Honor. And I understand your question and it does actually track the district court's reasoning a bit. So, if I could direct the court's attention to appendix 722, which is the magistrate judge's report and recommendation on Cisco's motion for summary judgment. And here, in the top part, the district court candidly admits that it was unsure. I quote, it bears noting that element in this context is not a precise term. And then the court went on to discuss one of this court's precedents. And as we elucidate in the briefing, there is quite a bit to define what an element of a claim is. You must look at the modifying language. You must consider the context of the noun. You cannot simply sever the noun from all of the adjectives and phrases around it. And so, to answer your question, that in the contract, so back on appendix 3, when it talks about material elements or steps of a claim in any patent or in the covenant that satisfies an element or step of a claim in any patent, that is a specific reference to this court's patent infringement analysis jurisprudence. And maybe I'm not understanding the full scope of your argument, but I at least was looking at appendix page 672, right? And then there is the combined license, prize, and service definition. And that just requires satisfies or is alleged by licensor or its affiliates to satisfy one or more material elements. So I didn't think that it was required to actually satisfy, but there could be coverage under the agreement if there's at least an allegation of satisfying. Correct, Your Honor. So that is important to focus on. And to direct your attention in response to that concern, I would direct you to appendix 203, which is Leonra's opposition to the motion for summary judgment in the first case, which is a part of the record of this case. And here, in the middle, we wrote, Leonra's infringement theory is not and has never been that these claim annotations are satisfied by hardware, i.e., the Intel processor alone. And then further, we wrote, Leonra has consistently maintained that the claim terms at issue are satisfied only by the running of Cisco software on the general purpose Intel processors. So you are correct in pointing to the combined license and product service definition as incorporating allegations, but that has never been Leonra's allegation that the naked hardware alone satisfies a claim annotation in the patent. But you do point to the licensed Intel processor as satisfying the processor portion component subclaim of the claim element in your claim. I would agree with your question, except for the part of the predicate, which Leonra disputes that the Intel processor is licensed. Leonra does point to the hardware as part of what should be considered in comparing the properly construed claims to the accused device. That would infringe if it ran the Cisco software. But as sold by Intel, it does not have that software and is not licensed. It cannot perform the functions as recited in the 518 asserted claims. So it's just a chip standing in the world, it's unlicensed, but as soon as they put the software on it to do what your patent requires, then it's licensed? That would not be licensed because Cisco is not a licensee. Intel is the licensee. So as sold by Intel as a supplier to Cisco, Intel's chips were not licensed and they do not... But Intel could put the software on it. Yes. If Intel did it, that would be a licensed product. If there are no further questions at this time, I will reserve the rest of my time for  Thank you. Thank you. May I proceed, Your Honor? Good morning. May it please the court, Mark Fleming from WilmerHale together with Heath Brooks on behalf of Cisco. This is most assuredly a contract case. Leonra made a deal. It was paid for its IP. It's now trying to get more money for the same rights. Chief Judge Gilstrap and Judge Payne recognize that and this court should too. I would say, Judge Cunningham, to the question you raised about combined licensed products and services, that provision is critical. And Leonra's position, I may be mispronouncing the plaintiff's name and I apologize if I'm – I was unclear. I don't speak Irish Gaelic so I don't know the right way to say it. But it would essentially nullify that provision in the contract. The whole reason for this provision is to cover the situation where Intel sells a general purpose chip, a processor to a customer like Cisco and Cisco then as a covered third party, which is stipulated, combines the processor with other technology like its software. Leonra didn't have to agree to that provision. Plenty of licenses don't have a provision like that. But they agreed to it and I assume they were well compensated for it. Yet under their reading, they can sap that contractual provision of all its meaning simply by drafting patent claims that modify the processor with additional functional language and suddenly the processor is no longer a claim element. There's nothing in the word element that requires giving this license such a commercially unreasonable interpretation where the licensor can evade the license just through clever drafting of patent claims. Element is a broad term. It just means a constituent part. It means that in plain English and it means it in patent law. As the court said in Corning Glass, it's the same as a limitation. It's simply a series of limiting words or phrases in a patent claim. And if Intel as a licensee under this agreement sells a product that reads on or is accused to read on a series of limiting words or phrases in a claim, which a processor is, then it is licensed and Cisco as a covered third party may then combine it with other technology and that is both licensed as a combined licensed product and service and subject to the covenant not to sue. So unless the court has any questions, we would respect. As a matter of patent law, have we ever said definitively how one identifies what a claim element is and does this case require us to do that? It does not require you to do it as a matter of patent law, Judge Stark, because this is a contract case. Fundamentally, you are interpreting under Delaware law what the parties have. Have we ever done it as a matter of neither side has been ever has cited a case to you where that has been done because I think no party has ever attempted to make an argument like this, that the word element should be, I mean, it's not a statutory term or anything like that. It's a word that is used generally as a very broad term to summarize a set of words or phrases in a claim. Sometimes it can be very short, as the court in Salazar referred to the phrase, a microprocessor as an element. Sometimes it can be very long. It all depends on, frankly, the infringement or the invalidity positions that are submitted to the court. But this isn't an infringement case. It's not an invalidity case. And there's nothing in any of the cases that anyone has found that suggests that element has anything more than the very broad definition that this court in passing in Corning Glass said was the same as a limitation. I don't think the court needs to decide it as a matter of patent law. You're just interpreting this contract. But if you felt that you wanted to say it, I think the right answer is an element of a claim is simply a series of limiting words or phrases in the claim, which is the language directly from Corning Glass. Thank you. Thank you very much, Your Honor. Your Honor, I would begin by responding to my colleagues' suggestions about the intent of intel in this agreement. And I would remind the court that even under Delaware law, the subjective intent of the contract, it is an objective standard that looks to the four corners of the document. And in this case, intel did not even draft the language. It was by RPX. So we don't even know what intel thought, and it is frankly irrelevant. And to the point, my colleague did mention the Salazar v. AT&T case, which we found most helpful in providing guidance to the court as to how to properly analyze what the limitation is of a claim element in a patent claim. And here, it was very clear that the claim element, and I'm quoting from page 14 of our reply brief, that a claim element is a processor that is required to have all the subsequent recited characteristics. It is not simply a naked processor, which is exactly what Siscoe urges the court to hold here. Unless the court has any further questions, thank you for your time. I thank both sides. The case is submitted. That concludes our proceedings. Thank you. Thank you.